UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**VICKY DIANE DIKE**                                                                               **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 5:24-CV-P92-JHM**

**DAVID KNIGHT et al.**                                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Vicky Diane Dike, a prisoner proceeding *pro se*, initiated this 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, Plaintiff's claim related to treatment of female inmates will be allowed to continue but her remaining claims will be dismissed.

### I. STATEMENT OF CLAIMS

Plaintiff, a convicted prisoner who was housed at the McCracken County Jail (MCJ) at the time relevant to the complaint, sues in their individual and official capacities MCJ Jailer David Knight, Captain Trey English, Sergeant McGinness, and Deputy Jailer Long.

According to Plaintiff, she informed MCJ that she is a practicing pagan, yet during the 2-3 searches of her cell each week she was forced to go into the chapel for the duration of the search. She alleges that the chapel is "structurally unsafe" and painted with Christian paintings and symbols. She states that after she filed several grievances about being forced into the chapel, she either had to go to a "drunk tank," which twice had urine and feces on the floor, or to the "scan room" where three times she was handcuffed to a bench.

Plaintiff also alleges that she was not allowed to use the outdoor "bull pen" for her religious holiday celebrations unless the rest of her cell also goes and MCJ "deems the weather appropriate

or determines the deputies have time which is never." She further states that she was not offered a special diet even though Jews and Muslims were. And she asserts, that no pagan religious study material was offered to her.

Plaintiff next alleges that female inmates were only afforded the use of the book cart every 2-3 months on the "midnight shift when most of the population is asleep." According to the complaint, MCJ offered only six "work slots for females" and those were given to detainees, not to prisoners like Plaintiff. She asserts that male inmates had more access to work details even though they have more behavior problems than the female inmates. She also states that only two classes were offered to female inmates, while the male inmates were offered "many more classes," as well as access to a garden. According to Plaintiff, male inmates had "chirp" devices to communicate affordably with their families, while women did not; and men exercised in the gym, while women had to use the chapel for exercise. She also notes additional discrepancies between the men's and women's living quarters that favored the men.

According to the complaint, Plaintiff repeatedly filed grievances about the above-listed conditions, which were handled by Defendants McGuiness and English, who took no action to remedy the conditions she grieved. Instead, Plaintiff alleges that they responded, "'This is not grievable," "This is a privilege and not a right," or "Grievance noted."

Plaintiff alleges that Defendant Long verbally harassed her by telling other inmates that she was a "bitch" and "mean," and discussing her children with other inmates. She describes being on a video visit while wearing a white t-shirt and jail-issued pants, during which Defendant Long allegedly eavesdropped for two minutes. Plaintiff states that Defendant Long then yelled at her for not wearing her jail-issued shirt despite another inmate also not wearing jail-issued clothes in the same room. Plaintiff further alleges that Defendant Long yelled at the occupants of her cell

when top bunks were open, yet prisoners were lying on the floor. Plaintiff explains that if the top bunks were unoccupied, it was because the older or infirm women could not use them. She states that if inmates refused to get on the top bunk, regardless of the reason, they were threatened with being taken to the "hole."

Plaintiff further alleges that as MCJ Jailer, Defendant Knight was "fully responsible for all of the constitutional violations stated herein due to the policies of his facility and those he employs."

Plaintiff requests compensatory and punitive damages, as well as injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Religion claims

According to Plaintiff, after she grieved having to wait in the chapel during cell searches, she was taken to alternate locations. Plaintiff alleges that she was not allowed to use the outdoor

"bull pen" for her religious holiday celebrations unless the rest of her cell went, the weather was "appropriate," and deputies were available. She further states that she was not offered a special diet, in contrast to Jewish and Muslim prisoners, or any pagan religious study material.

### 1. First Amendment

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To state a free-exercise claim, Plaintiff must establish that: (1) the belief or practice she seeks to protect is religious within her own "scheme of things," (2) her belief is sincerely held, and (3) Defendants have infringed upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987). "A practice will not be considered to infringe on a prisoner's free exercise unless it 'places[s] a substantial burden on the observation of a central religious belief or practice[.]'" *Evans v. Washington*, No. 1:19-CV-953, 2019 WL 6974735, at *5 (W.D. Mich. Dec. 20, 2019) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult[.]" *Id*. at 737. Further, "[p]risons do not have to respond to every religious request of an inmate; they only must allow prisoners a reasonable opportunity to exercise their faith." *Baucum v. Blount Cnty. Det. Facility*, No. 3:21-CV-140-CEA-DCP, 2021 WL 2418009, at *5 (E.D. Tenn. June 14, 2021) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)).

Here, Plaintiff fails to state a First Amendment claim. First, Plaintiff does not allege that her religion requires her not to be in the presence of Christian symbols. Regardless, although it is

not clear whether Plaintiff complained of being placed in the chapel during searches based on the Christian paintings and symbols or its alleged structural issues or both, after she complained, she was taken to other locations, which while less comfortable, did not have Christian paintings or symbols.

Plaintiff also does not allege that her sincerely held religious belief requires holiday celebrations outside. Plaintiff does not state that she ever requested to use the "bull pen" for holiday celebrations, but according to Plaintiff it was available for pagan celebrations when the weather was not a problem and deputies were available to supervise. Thus, Plaintiff has not provided allegations satisfying the "substantial burden hurdle." *Living Water Church of God*, 258 F. App'x at 734 (internal quotation marks omitted).

Finally, Plaintiff does not allege that her sincerely held religious belief requires a special diet or study material. Even if she had, she does not allege that she requested a special diet and study material, just that they were not offered to her. *See Engel v. CO1*, No. 4:20-CV-01915-RLW, 2021 WL 1392902, at *7 (E.D. Mo. Apr. 13, 2021) (prisoner, who identified his religion as "'Astru/Odinism/Catholicism/[Paganism],'" alleged that he asked about his religious materials and diet, but was denied, had not stated claim because he alleged "no facts indicating the content of this religious material or diet, much less that a denial inhibits expression manifesting some central tenet of his religious beliefs, or that he has been meaningfully curtailed in expressing adherence to his faith, or that he has been denied reasonable opportunities to engage in the fundamental activities of his religion"); *see also Baucum*, 2021 WL 2418009, at *5 ("Plaintiff does not allege that he has been denied the ability to engage in any aspect of his religious faith other than the facility's failure to produce a copy of certain religious texts, and he does not allege that the material has been banned or disallowed . . . [or] that [he] has been denied permission to have a [someone] bring him a copy

5

of those texts. Plaintiff's allegations are, therefore, insufficient to establish that he has been denied his First Amendment rights."). The Court will dismiss Plaintiff's First Amendment claim for failure to state a claim upon which relief may be granted.

### 2. RLUIPA

The Court also considers whether Plaintiff states a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which "protects against the substantial and unwarranted burdening of an inmate's right to 'religious exercise[.]'" *Pleasant-Bey v. United States*, No. 1:22-CV-00033, 2022 WL 16838811, at *3 (M.D. Tenn. Nov. 9, 2022); 42 U.S.C. § 2000cc-1. However, analysis of a RLUIPA claim parallels the analysis of a free-exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). Although the phrase "substantial burden" is not defined in RLUIPA, the Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in "free exercise" decisions. *Living Water Church of God*, 258 F. App'x at 733-34. Consequently, Plaintiff fails to state a claim under RLUIPA, as well.

### B. Treatment of female prisoners

Plaintiff alleges several disparities in the treatment of female prisoners compared to male prisoners at MCJ: female inmates were only offered use of the book cart infrequently and only at an inconvenient time; MCJ offered only six "work slots for females" and only detainees; despite more behavior issues, male inmates had more access to work details than the female inmates; only two classes were offered to female inmates, while the male inmates were offered "many more" and access to a garden; male inmates had "chirp" devices to communicate affordably with their

families, while women did not; men exercised in the gym, while women could only use the chapel; and men's living quarters were better than the women's quarters.

The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). In the context of a prison system, the Equal Protection Clause does not require that men's and women's prisons have identical programs, but rather programs which are "substantially equivalent." *Glover v. Johnson*, 478 F. Supp. 1075, 1079 (E.D. Mich. 1979) ("equivalent in substance if not in form"). "Courts use a standard of 'parity of treatment, as contrasted with identity of treatment, between male and female inmates with respect to the conditions of their confinement and access to rehabilitation opportunities.'" *Victory v. Berks Cnty.*, No. CV 18-5170, 2019 WL 5266147, at *9 (E.D. Pa. Oct. 17, 2019) (citing *Glover*, 478 F. Supp. at 1079); *Wilson v. United States*, 332 F.R.D. 505, 526 (S.D.W. Va. 2019) ("[W]hat the Equal Protection Clause requires in a prison setting is parity of treatment, as contrasted with identity of treatment, between male and female inmates.") (quoting *Bukhari v. Hutto*, 487 F. Supp. 1162, 1172 (E.D. Va. 1980)).

Because "'[i]n this area of constitutional law, each suit must be approached with caution and disposed of on a case by case basis,'" *Glover*, 478 F. Supp. at 1079 (citation omitted), the Court will allow Plaintiff's claim regarding the difference in treatment between male and female

prisoners, which appears to be the result of customs or policies of MCJ, to continue against McCracken County as the real party in interest[1] for damages only.[2]

### C. Defendants McGinness and English

Plaintiff alleges that Defendants McGinness and English handled her grievances and appeals yet did not make any changes to rectify the situations she identified.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure[.]") (citing cases). For this reason, the denial of a grievance or the failure to act based upon information contained in a grievance fails to state a claim under § 1983. *Gibbs v. Laughhunn*, No. 16-1771, 2017 WL 3140577 (6th Cir. Feb. 2, 2017); *see also LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001).

Accordingly, the Court will dismiss the claims against these Defendants for failure to state a claim.

---

[1] Plaintiff's claims against Defendants in their official capacities must be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the claims against Defendants in their official capacities are actually brought against the McCracken County government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). A municipality can be held responsible for a constitutional deprivation where there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[2] Plaintiff's request for injunctive relief is moot because she has been transferred from MCJ. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

### D. Defendant Long

According to the complaint, Defendant Long verbally harassed Plaintiff. However, "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987)).

And Plaintiff cannot bring a claim regarding Defendant Long's alleged behavior towards the other occupants of her cell. Plaintiff can only represent herself in this action. *See* 28 U.S.C. § 1654; *see also Zanecki v. Health Alliance Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) (holding that because "*pro se*" means to appear on one's own behalf, a person may not appear *pro se* on another person's behalf).

Accordingly, the Court will dismiss the claims against Defendant Long for failure to state a claim upon which relief may be granted.

### E. Defendant Knight

Plaintiff alleges only that Defendant Knight as the Jailer was responsible for the alleged constitutional violations because he is responsible for MCJ policies and MCJ employees.

The doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. at 691; *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009). Additionally, "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)); *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (stating that supervisory liability "must be based on active unconstitutional behavior and cannot be based upon

'a mere failure to act'") (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). As such, Plaintiff fails to state a claim against Defendant Knight.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims based on freedom of religion; against Defendants Jailer David Knight, Captain Trey English, Sergeant McGinnis, and Deputy Jailer Long; and for injunctive relief are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court will enter a separate Service and Scheduling Order to govern the development of the remaining claim regarding the treatment of women *vis a vis* male prisoners against McCracken County. In allowing this claim to continue, the Court expresses no opinion on its ultimate merit.

The Clerk of Court is **DIRECTED** to **terminate** Defendants Jailer David Knight, Captain Trey English, Sergeant McGinnis, and Deputy Jailer Long as parties to this action and to **add** McCracken County as a Defendant.

Date: October 4, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:  Plaintiff, *pro se*
     McCracken County Attorney
4414.009