**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**VICKIE DIANE DIKE** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 5:24-CV-00092-JHM-LLK**

**MCCRACKEN COUNTY** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion by Defendant McCracken County for summary judgment pursuant to Federal Rule of Civil Procedure 56. (DN 31). Plaintiff Vickie Diane Dike filed a response. (DN 34). Defendant filed a reply. (DN 35). Accordingly, this matter stands ripe for decision.

**I.**

At all times relevant to the adjudication of this motion, Plaintiff was incarcerated as a convicted prisoner at the McCracken County Jail ("MCJ"). (DN 9, PageID #: 41). Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of her constitutional rights during her incarceration at MCJ. (DN 1). The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915A and allowed a Fourteenth Amendment equal protection claim with regard to the treatment of female prisoners at MCJ to proceed against Defendant. (DN 9). Defendant denies the claims against it and now moves for summary judgment on Plaintiff's equal protection claim.

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the

basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of

summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**III.**

**A. Plaintiff's Allegations**

Plaintiff alleges several instances of disparate treatment of female prisoners compared to male prisoners at the MCJ. (DN 1). Specifically, Plaintiff alleges that: (i) female inmates were only offered use of a book cart infrequently and only at inconvenient times. (*Id.*, PageID #: 5); (ii) that Defendant offered only six (6) "work slots for females" which were only provided to pretrial detainees and not to convicted prisoners. (*Id.*); (iii) that male inmates had more access to work details than female inmates despite having more behavior-related issues. (*Id.*); (iv) only two classes were offered to female inmates while male inmates were offered "many more." (*Id.*, PageID #: 5-6); (v) that male inmates had access to a garden that female inmates did not. (*Id.*, PageID #: 6); (vi) that male inmates were able to utilize a "chirp" device to communicate with their families, while women could not. (*Id.*); (vii) that male inmates could exercise at the prison's gym, but female inmates could not and were forced to use the MCJ's chapel for workouts instead. (*Id.*); and (vii) that the male inmate's living quarters were better than the female inmate's living quarters. (*Id.*, PageID #: 7).

**B. Defendant's Motion for Summary Judgment**

Defendant makes three arguments[1] in its motion for summary judgment. (DN 31). First, Defendant argues that Plaintiff fails on the merits because there is no evidence of either disparate

[1] Beyond the three arguments described herein, Defendant also contends that if Plaintiff's claims are not dismissed outright any damages that Plaintiff claims for mental or emotional injury are barred by the Prison Litigation Reform Act ("PLRA") which provides in relevant part that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotion injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). (DN 31, PageID #: 115).

treatment of female prisoners at MCJ or any international or purposeful discrimination against female prisoners. (*Id.*, PageID #: 106-11). Second, Defendant argues that there is no evidence of intentional or purposeful discriminatory intent on behalf of the Defendant. (*Id.*, PageID #: 111-12). Third, Defendant contends that Plaintiff did not properly exhaust all of her remedies under the PLRA. (*Id.*, PageID #: 112-15).

*1. Disparate Treatment*

Defendant cites caselaw standing for the proposition that in the context of a prison system, the Equal Protection Clause does not require that men's and women's prisons have identical programs, but rather must be substantially equivalent. *See Glover v. Johnson*, 478 F. Supp. 1075, 1079 (E.D. Mich. 1979) (DN 31, PageID #: 106). Further, Defendant cites Sixth Circuit caselaw explaining that "disparate treatment" is the initial element of an equal protection claim and that in the context of a prisoner alleging equal protection violations, if a court agrees that parity of treatment exists, "it is unnecessary to engage in any further analysis][.]" *See Glover v. Johnson*, 198 F.3d 557, 561 (6th Cir. 1999) (*Id.*, PageID #: 107).

Plaintiff contends that there is no disparate treatment shown in the record that supports Plaintiff's claims. (*Id.*). With regard to the use of the book cart, Defendant points to Plaintiff's deposition in which she testified that the book cart came around late at night and that the female inmates had a limited amount of time to select books (DN 31-4, PageID #: 168), that she did use the book cart (DN 31-4, PageID #: 143-44), and that she had no firsthand knowledge as to how often the men were offered books. (*Id.*, 145-46). Thus, Defendant contends that Plaintiff's allegations regarding disparate treatment regarding the book cart have not satisfied her burden of proof. (DN 31, PageID #: 108).

With regard to Plaintiff's allegations that the jail offered only six work slots for female inmates and that male inmates had more access to work details than female inmates, Defendant points to Plaintiff's admission that "women are allowed to serve meal trays to the female cells, maintain and clean the female hallways, and assist the COS with clothing change by handing the female inmates their clothes from a cart." (DN 31-5, PageID #: 169). Plaintiff then describes jobs that men allegedly were allowed to do including jobs performed outside, in the kitchen, the laundry room, and in the sally port. (*Id.*). Accordingly, Defendant contends that Plaintiff has effectively admitted that multiple different jobs were available to female inmates and contends that Plaintiff has not asserted that she knows the number of jobs available to male inmates, or the number of male inmates with jobs compared with female inmates. Thus, Defendant argues that Plaintiff has not met her burden on this allegation.

With regard to Plaintiff's allegations that there were only two classes offered to female inmates and that vocational classes were not offered to female inmates, Defendant points to Plaintiff's interrogatory response in which she stated that four classes were offered to female inmates and that she had enrolled in an anger management class. (DN 31-5 PageID #: 169-70). Further, Defendant points to Plaintiff's deposition where Plaintiff testified that she had been accepted into an electrical vocational class but was not able to complete it because her prison term ended. (DN 31-4, PageID #: 141-142). Accordingly, Defendant argues that Plaintiff cannot show disparate treatment when her own testimony provides that she was able to enter into classes.

Defendant also argues that Plaintiff's allegation that only male inmates had chirp devices to communicate affordably with their families is similarly unfounded. Defendant points to Plaintiff's interrogatory answers in which she admits that the chirp devices offered to male inmates cost the male inmates $1.00 per month and .10 cents per text, but the kiosk system the female

inmates use costs .20 cents per text. (DN 31-5, PageID #: 170-71). Defendant argues that this admission by Plaintiff shows that female inmates were offered an equivalent kiosk system, and despite the pricing per text being different, Plaintiff has offered no evidence that the total cost of the kiosk system was greater for female inmates when compared to male inmates utilizing a chirp device with a monthly fee associated with it. (DN 31, PageID #: 109). Accordingly, Defendant contends that Plaintiff has not met her initial burden of proving unequal treatment.

With regard to Plaintiff's allegations that male inmates were able to utilize MCJ's gym for exercise while female inmates were forced to use a smaller chapel with less exercise equipment Defendant contends that Plaintiff has not offered evidence to support a finding of disparate treatment. (*Id.*, PageID #: 110). Specifically, Defendant points to Plaintiff's Interrogatory Response providing generally that the chapel is connected to an outside walled-in recreational area for female inmate use, which is usable during daytime weather permitting. (DN 31-5, PageID #: 173-74). Further, Defendant points to Plaintiff's deposition in which she testified that the chapel has exercise equipment and that she did not have personal knowledge regarding whether the equipment available to the male inmates in the gym is different from the equipment available to female inmates in the chapel. (DN 31-4, PageID #: 131). Defendant argues that the record reflects that the gym and the chapel offer both male and female inmates a substantially similar ability to exercise and be outside. (DN 31, PageID #: 110). Further, Defendant contends that Plaintiff has offered no evidence regarding the size of the chapel when compared to the gym, nor the proportion of male inmates versus female inmates to support her allegation that the chapel is smaller or offers disproportionately less equipment to support a finding of disparate treatment. (*Id.*). Accordingly, Defendant contends that it is entitled to summary judgment on these claims.

*2. Intentional or Purposeful Discrimination*

Defendant argues that "to state an equal protection claim, a Plaintiff must not only show that she was similarly situated to the others who received preferential treatment, but also that discriminatory intent or purpose was a factor in the challenged action. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1997) (DN 31, PageID #: 111). Defendant argues that Plaintiff has not alleged that jail officials intentionally or purposefully discriminated against female inmates because of the adverse effects it would cause them, and even if the Court construes her allegations as such, there is no evidence to support the assertion. (*Id.*, PageID #: 112).

*3. Failure to Exhaust Administrative Remedies*

Defendant contends that MCJ's grievance policy requires three levels of appeal in order to fully exhaust administrative remedies. Defendant argues that none of Plaintiff's grievances moved beyond the first level of appeal. Accordingly, Defendant contends that Plaintiff has not exhausted her administrative remedies pursuant to the PLRA. (DN 31, PageID #: 113-115).

**C. Plaintiff's Response**

Plaintiff contends that there are several disputes of material fact that would preclude granting summary judgment in favor of Defendant. (DN 34). Plaintiff contends that "Plaintiff's grievance materials and interrogatory answers identify repeated complaints concerning book-cart access, work opportunities, classes, recreation, housing conditions, communication devices, and other conditions of confinement." (*Id.*, PageID #: 300). Plaintiff then cites her answers contained in "Plaintiff's Answers to First Set of Interrogatories" and a "deposition" as evidence for any material dispute of fact. Notably, Plaintiff does not cite specific parts of the Answers to First Set of Interrogatories or Deposition that set forth these alleged material disputes of fact. In fact,

Plaintiff's Response contains no citations to the record at all beyond conclusorily pointing the Court to her answers to interrogatories and deposition transcript with no specifying page numbers.

Plaintiff points to deposition testimony in which she opines that the exercise equipment and space used by female inmates was not fully usable when compared to the men's equipment and spaces. (*Id.*, PageID #: 301). Plaintiff also points to her deposition transcript and answered interrogatories standing for the proposition that the book cart came only every two or three months and often at night. (*Id.*, PageID #: 301-02). She also points to testimony that "women had only limited classes outside [of] GED while men had more classes and trade-oriented opportunities. (*Id.*, PageID #: 302). Plaintiff also alleges that "Plaintiff's discovery responses state that women did not receive the same outside work detail, kitchen work, laundry work, or similar opportunities available to the male inmates, and that the female population had fewer work slots." (*Id.*). Plaintiff argues that there are also material disputes concerning housing. (*Id.*). Plaintiff maintains that her grievances corroborate these material disputes of fact. (*Id.*).

**D. Defendant's Reply**

Defendant contends that Plaintiff's Response "contains vague and generalized assertions that her grievances, interrogatory answers, and deposition testimony contradicts Defendant's characterization of the Evidence. However, she does not cite to specific parts of the record or otherwise include as exhibits any of the evidence that supposedly supports her assertions." (DN 35, PageID #: 305). Defendant contrasts Plaintiff's "vague and generalized assertions" by pointing to specific admissions and testimony of Plaintiff cited in its Motion for Summary Judgment that "undermine her allegations of unequal treatment." (*Id.*). Defendant argues that despite the Court being charged with viewing the evidence in the light most favorable to the non-moving party, the non-moving party must still produce evidence that shows a genuine dispute of

material fact. (*Id.*, PageID #: 305-06). Defendant argues Plaintiff has not produced evidence to create a genuine dispute of material fact concluding that "Plaintiff's bare allegations are not more than what she asserted in her Complaint, which is not sufficient to overcome Defendant's [Motion for Summary Judgment]." (*Id.*, PageID #: 305-06).

With regard to Plaintiff's grievances, Defendant points out that Plaintiff's response alleges that "some grievances did not progress to later appeal stages because responses were not timely returned." (*Id.*, PageID #: 306; DN 34, PageID #: 301). Defendant further points to an allegation in Plaintiff's Response that "a factual issue remains concerning whether the grievance system was meaningful available for full exhaustion in practice." Defendant contends that Plaintiff's argument regarding grievances not progressing to a later appellate stage is an admission that she did not exhaust her administrative remedies. (*Id.*). Further, Defendant argues that the last grievance that Plaintiff submitted relating to the events in her Complaint was filed on May 6, 2024, and responded to on May 9, 2024. (DN 31-6, PageID #: 250). Defendant points out that pursuant to MCJ's grievance procedures, Plaintiff was required to appeal that decision within 48 hours of receiving a response and she failed to do so. (DN 31-3, PageID #: 123-24). Defendant argues that Plaintiff was released from the MCJ on May 22, 2024, leaving Plaintiff 13 days to appeal the decision, so her contention that the grievance system is not available to her is factually inaccurate. (DN 31-2, PageID #: 118). Lastly, with regard to Plaintiff's specific allegations of violations of the Fourteenth Amendment's Equal Protection Clause Defendant contends that Plaintiff has not produced sufficient evidence to find constitutional violations. (*Id.*, PageID: 308).

With regard to Plaintiff's allegation that the living quarters of male inmates are better than the living quarters of female inmates, Defendant argues that the record reflects that this is mere speculation on Plaintiff's part, and that Plaintiff has demonstrated no firsthand knowledge of the

configuration of the male inmate's living quarters, nor the living conditions therein. (DN 31, PageID #: 110-11).

Defendant points to Plaintiff's deposition in which she admitted that she had not seen any of the men's cells since the year 2000 or 2002 and does not personally know whether the layout has changed since then. (DN 31-4, PageID #: 137-39). Further, Defendant points to Plaintiff's admission that she has not seen the men's cells when men are actually occupying them, which Defendant contends makes it impossible for her to argue that the cells for female prisoners were more crowded. (*Id.*, PageID #: 139-40). Defendant argues that Plaintiff has offered no evidence regarding the size of the cells, nor the number of prisoners inside of the cells to support her living conditions allegations. (DN 31, PageID #: 110-11).

In sum, Defendant argues that Plaintiff's allegations of disparate treatment of female inmates have been disproven or discredited based on Plaintiff's own admissions. (*Id.*, PageID #: 111). Accordingly, Defendant argues that Plaintiff has not generally met her burden of proof on any of these claims.

**IV.**

**The PLRA Bars Plaintiff's Lawsuit**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies under the PLRA is an affirmative defense

for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455-56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). The burden of defendants asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and shows that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

In order "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules', rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones,* 549 U.S. at 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88). To exhaust a claim, a prisoner must proceed through all of the steps of a prison's administrative process, *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999), and failure to "properly" exhaust bars suit in federal court. *Woodford*, 548 U.S. at 93. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id.* at 90-91. But an inmate need only exhaust those remedies that are "available"; if an administrative remedy "is not capable of use to obtain relief," then the PLRA will not act as a barrier to suit. *Ross v. Blake*, 578 U.S. 632, 642 (2016).

MCJ's Facility Rules & Regulations for Inmates contains the following regarding the filing of inmate grievances:

> **Grievance Procedures:** The purpose of the grievance process is to resolve your complaint at the lowest level as quickly and fairly as possible without reprisal. Listed below are some of the types of problems and complaints which you may and may not attempt to resolve through the inmate grievance system. If the problem cannot be rectified immediately by the staff on duty, a requisition or grievance will be issued to you.
>
> 1. **Grievable**: Personal and social service's needs, wrongful actions by staff, and violations of your rights.
>
> 2. [**Non-Grievable**]: Classification decisions, work assignments, commissary operations, medical decisions made by a physician, jail schedules, menus, answers to grievances you don't agree with which do not violate any rules, regulations, or policies, decisions made by the Disciplinary Hearing Officer.
>
> To file a grievance you must first make your complaint to the officer assigned to your area. If there is a complaint shared by more than one inmate only one person needs to make the complaint to the staff or write a formal grievance. You may list the other inmates in your cell as witnesses.
>
> The Grievance Hearing Officer (GHO) has 10 (ten) working days to answer your grievances. Exception: The officer on duty will check to [insure] that your grievance is not time sensitive and requires faster action. Making false, baseless or repeated frivolous complaints and formal grievances may subject you to disciplinary actions.
>
> If you are not satisfied with the disposition of the grievance by the GHO, you may resubmit your grievance response as a grievance appeal. There are three (3) stages to the grievance appeal process, with the final appeal being responded to by the Jailer. Grievance Appeals must be completed within (48) forty-eight hours. The appellate Grievance Hearing Officers have ten (10) working days to answer your grievance appeal.

(DN 31-3, PageID #: 123-24) (emphasis in the original).

As can been seen from MCJ's Facility Rules & Regulations for Inmates, there are three stages to the grievance appeal process, with a final appeal to the Jailer being the last leg of the process. (*Id.*, PageID #: 124). In this instance, the record reflects that Plaintiff filed numerous grievances during her time at MCJ. (DNs 31-6, 31-8). Only Grievance Nos. 6525, 6526, 6527

were appealed by the Plaintiff, and each only one time. (DN 31-8, PageID #: 281-83). Further, to the extent that Plaintiff argues there was not a meaningful grievance process available to her, Plaintiff has not provided any evidence to support that assertion, and the fact that she did appeal some of her grievances cuts against that argument. Accordingly, Plaintiff has not properly exhausted all administrative remedies available to her regarding the claims brought in her instant lawsuit. *See Woodford*, 548 U.S. at 93. The Court finds that Defendant have carried their "burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy[.]" *Weston v. Louisville Metro Gov't*, No. 3:23-CV-P147-JHM, 2026 LEXIS 185471, at *7 (W.D. Ky. Mar. 13, 2026) (citing *Morgan v. Kentucky*, No. 3:17-CV-00474-JHM, 2018 U.S. Dist. LEXIS 18066, at *8 (W.D. Ky. Feb. 2, 2018)). Further, administrative remedies are not exhausted under the PLRA when a prisoner files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Id.* at *7-8 (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). Thus, the suit is barred by the PLRA, and Defendant is entitled to summary judgment on Plaintiff's claims.

**V.**

For the reasons set forth above, **IT IS ORDERED** that Defendant's motion for summary judgment (DN 31) is **GRANTED**. The Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date: November 25, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record

4414.016